IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TENA W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:17-cv-371 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Tena W. ("Tena") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Tena alleges that the Administrative Law Judge ("ALJ") erred by: (1) relying on vocational expert testimony to fulfill his "step 5" burden without properly addressing post–hearing objections to that testimony; and (2) failing to properly analyze the opinion evidence of Tena's treating therapist, Andrew G. Burns, L.P.C., in accordance with Agency regulations and Fourth Circuit precedent.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tena failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Tena filed for DIB in December 2013, and SSI in January 2014, claiming that her disability due to depression, anxiety, and all-over body pain began on February 2, 2011. R. 273, 277. Tena's date last insured was December 30, 2013; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 273; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Tena's applications at the initial and reconsideration levels of administrative review. R. 82–90, 91–99, 102–111, 112–123. On March 30, 2016, ALJ David S. Lewandowski held a hearing to consider Tena's claims for SSI and DIB. R. 44–81. Counsel represented Tena at the hearing, which included testimony from vocational expert Robert W. Jackson. On June 9,

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2016, the ALJ entered his decision analyzing Tena's claims under the familiar five-step process[3] and denying her claim for benefits. R. 18–38.

The ALJ found that Tena was insured at the time of the alleged disability onset through December 30, 2013, and that she suffered from the severe impairments of fibromyalgia, obesity, major depressive disorder, and anxiety disorder.[4] R. 22–23. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 23–25. The ALJ recognized that fibromyalgia is not a listed impairment, but considered whether it medically equals a listing alone or in combination with at least one other medically determinable impairment. R. 23. Here, the ALJ found that her fibromyalgia did not meet a listing in either capacity. Id. Additionally, obesity is considered at each step of the evaluation process in conjunction with the claimant's other impairments. R. 23–24. The ALJ determined at this step that Tena's obesity had not reached a level that would cause other impairments to meet or medically equal a listed impairment. R. 24. For the latter conditions, the ALJ specifically considered listing 12.04 (depressive, bipolar and related disorders) and listing 12.06 (anxiety and obsessive–compulsive disorders). Id. The ALJ found that, regarding her mental impairments, Tena had mild restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. R. 24–25.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Tena was 52 years old on the alleged disability onset date, making her an individual closely approaching advanced age under the Act. R. 26.

The ALJ concluded that Tena retained the residual functional capacity ("RFC") to perform medium work. R. 25. Specifically, the ALJ found that Tena can: frequently perform postural activities but can only occasionally climb; have occasional interaction with coworkers and supervisors; and have no interaction with the general public. Id. The ALJ determined that Tena is unable to perform her past relevant work as a receptionist and child monitor, but that she could perform jobs that exist in significant numbers in the national economy, such as packer, cleaner, and laundry worker. R. 35–37. Thus, the ALJ concluded that Tena was not disabled. R. 38. Tena appealed the ALJ's decision and the Appeals Council denied her request for review on June 6, 2017. R. 1–4.

## ANALYSIS

Tena alleges that the ALJ erred by: (1) relying on vocational expert testimony to fulfill his "step 5" burden without properly addressing post-hearing objections to that testimony, particularly his failure to properly discuss outcome-determinative rebuttal evidence; and (2) failing to properly analyze the opinion evidence of Tena's treating therapist, Andrew G. Burns, L.P.C., in accordance with Agency regulations and Fourth Circuit precedent.

**A. Medical History**

1. Physical Impairments

Tena claimed generalized body pain in her initial disability report, with an onset date of February 2, 2011. R. 82, 84. Tena stated that she was formally diagnosed with fibromyalgia in 2014, and began taking Lyrica that same year.[5] R. 448. Tena continued to complain consistently of all-over body pain and ongoing issues with fatigue. R. 84, 93, 103, 106–07, 113, 277, 285,

---

[5] There is some discrepancy in the record regarding the onset of Tena's fibromyalgia. The Christianburg Family Medicine records note a fibromyalgia assessment on September 17, 2008. R. 428–29. Lyrica first shows up in the medical records on February 19, 2014. R. 441. Tena stated in the hearing that she was diagnosed with fibromyalgia at some point in 2014. R. 57.

297–304, 308–11, 314–16, 318–19. She claims the pain keeps her from sleeping well, dressing quickly, bathing, and cooking; it takes her two days to do laundry and three days to clean the house; and she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and concentrating. R. 297–304. Tena testified that the fibromyalgia makes her very sore and makes her skin feel like it is on fire; causes sharp pains and muscle spasms; and makes her stiff after sitting for too long. R. 59–60, 62. She testified that she has to rest forty-five minutes after showering before she can move on with her day because of the fibromyalgia pain. Id. Tena told the medical consultant that Lyrica does not control her symptoms and makes it difficult for her to concentrate. R. 61, 448. On the other hand, her records from Christianburg Family Medicine show that an increased dose of Lyrica works for her pain and does not cause side effects. R. 386. Tena also experienced improvement in her fibromyalgia symptoms with Cymbalta and gabapentin in late 2015. R. 559–60, 570–71.

    2. <u>Mental Impairments</u>

Tena's history of depression begins in her earliest provided medical records from Christianburg Family Medicine in September 2008. R. 428–29. She re-started medication for depression in February 2012 after reporting that her depression "comes and goes." R. 421–22. Since 2012, Tena's anxiety and depression has continued to fluctuate and has been accompanied by numerous medication changes and adjustments. R. 388, 391–92, 396, 400, 402–04, 406, 408, 410, 412–13, 415, 418, 420, 559, 570, 579, 587, 590–91, 593, 595, 602–03, 608–09, 615–16. She was later diagnosed with bipolar disorder in February 2016. R. 455. As a result of her mental health issues, Tena testified that she is scared to go out in public, interact with people, and drive on roads; she is short and sharp with other people; and she wants to be left alone, so she refuses to answer the phone or get out of bed. R. 58–59. Tena first began seeing her therapist, Andrew

Burns, L.P.C. (licensed professional counselor), in April 2015, at which time her initial assessment was for bipolar and social anxiety disorders. R. 457. Mr. Burns indicated that from November 2015 to January 2016, Tena had shown much improvement since her intake. R. 466. In December 2015, Tena also told her primary care provider that her anxiety and depression felt stabilized, although insurance no longer covered Mr. Burns and she was going to find a new therapist. R. 559.

### 3. Medical Opinion Evidence

In April 2014, as part of the state agency's initial disability determination, Thomas M. Phillips, M.D., reviewed the record and found that Tena could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand or walk for six hours and sit for six hours in an eight-hour day; occasionally climb ramps and ladders; frequently kneel, crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations. R. 87–88. He made these findings based on Tena's fibromyalgia. Id.

In April 2014, in the same initial disability determination, Howard S. Leizer, Ph. D., reviewed Tena's record and completed a psychiatric review technique form. He found that Tena had severe fibromyalgia and non-severe affective disorders. R. 85. The affective disorders resulted in mild restrictions in daily living; no difficulties in maintaining social functioning; no difficulties maintaining concentration or completing tasks; and no repeated episodes of decompensation. R. 86. He explained that Tena's depression has been controlled for many years with medication and treatment, and there was no evidence of psychological factors causing significant functional limitations. Id.

In September 2014, Salman Gohar, M.D., performed a consultative examination for the

6

state agency. R. 447. Dr. Gohar diagnosed depression, anxiety, fibromyalgia, and obesity.[6] R. 450. In his functional assessment, Dr. Gohar stated Tena: could stand, walk, and sit, each for six hours, in an eight–hour work day; could lift and carry less than twenty-five pounds occasionally and ten pounds frequently; did not have any manipulative, postural, visual, or communicative limitations; and did not need an assistive device to move. R. 450–51. Dr. Gohar specifically observed that Tena appeared comfortable and could move around without difficulty. R. 449. She had normal coordination, could walk without difficulty, her range of motion was within normal limits, and she had full strength. R. 450–51. At the time of the examination, Tena was not feeling depressed, did not have any loss of interest in the things she liked to do, and was not suicidal. R. 448. She did report feeling anxious and having panic attacks, and stated she preferred to stay at home and avoid social contact. Id.

As part of Tena's request for reconsideration of the state agency's disability determination, Richard Surrusco, M.D., evaluated the records in September 2014. He found that Tena could occasionally lift or carry fifty pounds; frequently lift or carry twenty-five pounds; stand, walk, or sit for six hours in an eight-hour workday; could frequently climb ramps or stairs, stoop, kneel, crouch, and crawl; and occasionally climb ladders. R. 119–20. He found Tena did not have manipulative, visual, communicative, or environmental limitations. R. 120. Richard J. Milan, Jr., Ph.D., completed another psychiatric review form as part of the same reconsideration in September 2014. He found that Tena suffered from: severe unspecified arthropathies; severe disorders of muscle, ligament, and fascia; and non-severe hypertension, hyperlipidemia, affective disorders, and anxiety disorders. R. 117. He otherwise affirmed Dr. Leizer's opinion from April 2014. R. 118. Dr. Surrusco noted that Dr. Gohar's opinion was less persuasive because it was "without substantial support from other evidence in the record," and relied "heavily on the

---

[6] Dr. Gohar also diagnosed hypertension and dyslipidemia. R. 450.

7

subjective report or symptoms and limitations provided by the individual," leading him to conclude that the totality of the evidence did not support Dr. Gohar's opinion. R. 121.

After two therapy sessions, Mr. Andrew Burns, a Licensed Professional Counselor, completed a medical source statement concerning Tena's anxiety. He stated that her anxiety caused marked restrictions in daily living; extreme difficulties in social functioning; and marked episodes of decompensation. R. 504–06. He stated there was insufficient evidence to determine if there was any impact on her concentration and ability to complete tasks. Id.

### 4. Post-Hearing Evidence

In her Post-Hearing Memorandum and Objections to the Vocational Witness' Testimony, Tena submitted an opinion contesting the positions offered by the vocational witness at the hearing. R. 347–48. Paula Santagati, a Senior Vocational Rehabilitation Counselor for the Massachusetts Rehabilitation Commission, stated that "an individual who can only occasionally interact with coworkers and supervisors would be unable to successful[ly] transition from training and the typical probationary period successfully and therefore, is unable to sustain any of the jobs identified at the hearing." R. 348. The opinion does not make any specific reference to Tena's medical records, claims, or situation as a whole. See R. 378–79. Ms. Santagati based her opinion on two factors: (1) the ALJ's finding that Tena is limited to occasional interaction with coworkers and supervisors, and (2) allegedly comparable positions to those offered at the hearing (packer, cleaner, and laundry worker), including cashier at CVS or Shaw's, dishwasher for Healthcare Services, factory worker at Gillette, cleaner for Merry Maids, and a position at Benchmark Senior Living Communities. R. 378.

### B. Vocational Expert's Testimony

Tena argues that the ALJ erred in relying on the vocational expert's testimony to fulfill

8

his "step 5" burden because he failed to properly address her post-hearing objections to the testimony. Specifically, Tena asserts the ALJ failed to properly address her rebuttal evidence because he erroneously relied on his own "lay opinion" to resolve the vocational conflict in the record created by Dr. Santagati's opinion, thus failing his step 5 burden.[7] By that reasoning, Tena alleges that the vocational expert is the only appropriate source to resolve the issue. The Commissioner counters that the ALJ addressed the study and properly exercised his discretion to rely on the vocational expert's testimony. Additionally, the ALJ appropriately used his discretion in rejecting the Santagati report and resolving the conflict in the record.[8]

The ALJ has a clear duty "to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Seacrist v. Weinberger, 538

---

[7] Tena raised a number of other objections to the vocational expert's testimony in her post-hearing memorandum and objections. See R. 344–50. The issue involving Santagati's contradicting opinion is the only issue presently before the Court.

[8] The Commissioner raises a procedural objection to Tena's first assignment of error and contends that she waived the argument concerning the ALJ's consideration of her post-hearing objection. The Santagati report was submitted five months before the hearing, and Tena's representative never raised the Santagati position at the hearing or challenged the vocational expert on his opinion regarding her limitation on social interaction. Def.'s Br. at 10, Dkt. 17. Because Tena did not probe the issue at the hearing, the Commissioner argues that her challenge to the impartial vocational expert's testimony is waived. Id.

When objecting to a vocational expert's testimony, a claimant must raise the argument during the hearing or risk waiving it. See Sayre v. Chater, 113 F.3d 1232 (Table), 1997 WL 232305, at *2 (4th Cir. May 8, 1997) (finding plaintiff's "broadside attack" on the vocational expert's testimony waived where plaintiff failed to raise the issue with either the ALJ or the Appeals Council). The Fourth Circuit has not addressed the issue regarding the waiver of post-hearing objections, although other district courts in this circuit have (including post-hearing objections based on the same Santagati opinion presently before the Court). See Looney v. Berryhill, Civil No. 3:17cv450, 2018 WL 3826778, at *12 (E.D. Va. Aug. 10, 2018) (finding plaintiff's post-hearing objection based on same Santagati report waived because plaintiff was raising a new objection not otherwise raised at the hearing, and ALJ properly ignored the post-hearing objection); Jenkins v. Colvin, Docket No. 5:15-cv-00010, 2016 WL 4373701, at *8 (W.D.N.C. Aug. 12, 2016) (finding plaintiff's post-hearing objection to vocational expert testimony waived because plaintiff had opportunity to challenge vocational expert's testimony during hearing and failed to do so).

In this case, Tena's representative did not raise the issue created by the Santagati report at the hearing, even though it was submitted over five months beforehand. See R. 44, 378–79. Furthermore, Tena did not question the vocational expert about the report, nor did she challenge his opinions on her social interaction limitation. More striking is the fact that Tena argues that only the vocational expert, not the ALJ, can resolve the conflict in the record. Pl.'s Br. at 7, Dkt. 13. She, in fact, had the opportunity at the hearing to raise the conflict during the vocational expert's testimony and failed to do so. It seems difficult for Tena to argue that she has not waived this objection when it was her inaction that resulted in the ALJ being the only one to weigh in on the conflict created by the Santagati report. Tena cannot legitimately object to the circumstance that she created.

Because this specific question remains unaddressed in the Fourth Circuit, I will refrain from ruling on this issue and instead focus on the Commissioner's substantive objection to this assignment of error.

F.2d 1054, 1056–57 (4th Cir. 1976) (explaining that the Commissioner, not a court, is responsible for reconciling inconsistencies in medical evidence); Reeves v. Berryhill, Civil Action No. 3:16-CV-2510, 2017 WL 3433706, at *11 (M.D. Pa. Aug. 10, 2017) ("ALJ's protracted explanation for why she relied upon [the testifying VE's] opinion . . . was more than adequate to support that reliance."); McCaffrey v. Colvin, 978 F. Supp. 2d 88, 92 (D. Mass. 2013) (stating that an ALJ correctly does his job when he weighs credibility, resolves conflicting evidence, and draws inferences from evidence in the record and that a lay person is competent to evaluate conflicting opinions of two vocational experts). If a claimant raises a valid post-hearing objection that provides contrary opinion to the vocational expert's testimony, then the ALJ can evaluate the conflicting opinions and reach a conclusion as long as the ALJ provides some explanation for his decision. Looney v. Berryhill, Civil No. 3:17cv450, 2018 WL 3826778, at *11 (E.D. Va. Aug. 10, 2018) (citing cases).

Tena alleges that the ALJ failed to adequately consider the conflict of evidence that resulted in the record with her introduction of the Santagati report, which stated that her mental restrictions preclude her from doing *any* work. Interestingly, several other district courts (including in the Fourth Circuit) have addressed identical Santagati reports. See Looney, 2018 WL 3826778, at *11–*12; Rosado v. Berryhill, Action No. 4:16–cv–00173, 2018 WL 816578, at *14 (E.D. Va. Jan. 22, 2018) (affirming ALJ's rejection of Santagati's report due to conclusions that "def[y] common sense"); Lara v. Berryhill, 2017 WL 7790109, at *9–10 (S.D. Tex. Dec. 4, 2017) ("Santagati identifies no factual basis beyond her own opinion as to why every single job in America requires more than occasional interaction with others . . . . Santagati's opinion is not sufficiently supported by any evidence."); Reeves, 2017 WL 3433706, at *11.

Reeves is directly on point. In that case, the ALJ similarly found that the claimant had

10

severe impairments of fibromyalgia, obesity, anxiety disorder, and major depressive disorders, and that the claimant could have only occasional interaction with coworkers and supervisors and no interaction with the public. Id. at *8. The plaintiff brought a similar post-hearing objection— based on an identical Santagati report—to the testimony of the vocational expert. Id. The claimant alleged that her limits on interactions with others prevented her from performing any job whatsoever. Id. at *11. The court held that the ALJ "properly characterized [the testifying vocational expert] as an expert . . . and no objection to the contrary was made by [the claimant's] attorneys at the hearing." Id. The ALJ thus properly relied on the vocational expert's testimony. Id. The court notably did not require the ALJ to explain why she ignored the Santagati opinion and accepted her explanation for her reliance on the vocational expert's testimony. See id.

In the present case, the ALJ sufficiently explained his reliance on the vocational expert's testimony, similarly to the ALJ in Reeves. To begin, the vocational expert, Mr. Roberts, submitted his resume to the ALJ. Tena was offered an opportunity at the hearing to ask questions about it and she declined. R. 72. The ALJ specifically asked the vocational expert which occupations an individual with Tena's limitations could perform, and the expert responded with three: packer, cleaner, and laundry worker. The ALJ asked if there were any conflicts between the occupations listed and the Dictionary of Occupational Titles, and Mr. Jackson confirmed there were not. The ALJ also discussed Tena's objections to the jobs provided by the vocational expert, including the objection that the "jobs could not be learned because training must be done by a supervisor or experienced worker." R. 37. He noted that the listed jobs require no more than occasional interaction with others, which was equal to the limitation on social interaction placed on her RFC. Id.

The ALJ also explicitly referred to Tena's post-hearing objections and addressed them in

11

his ruling. See id. at 18–20, 37. He pointed out that the Santagati report did not specifically address the jobs cited by Mr. Jackson, and the report listed jobs that would actually require frequent interaction—more than permitted by Tena's RFC. Id. The ALJ in the present case went further than the ALJ in Reeves in that he specifically addressed why he rejected the Santagati report, in addition to explaining why he relied on the expert's testimony. The ALJ assessed the expertise of the expert; weighed conflicting evidence; and clearly explained his conclusion. The ALJ adequately addressed Tena's post-hearing objections and sufficiently explained his rejection of the Santagati report and his reliance on the vocational expert.[9] The court is not "left to guess about how the ALJ arrived at his conclusions." Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). As such, there is substantial evidence in the record and sufficient reasoning in his opinion to support the ALJ's findings.

### C.  Treating Counselor's Opinion

In her second assignment of error, Tena argues that the ALJ erred in discounting the opinion of Andrew G. Burns, who is a licensed professional counselor, as she asserts he was her treating source, which entitles his opinion to great weight.[10] Pl.'s Br. at 15, Dkt. 13. Mr. Burns's opinion, according to Tena, was "directly contrary" to her social interaction RFC, and the ALJ failed to properly analyze this opinion in making his determination. Id. at 13.

The social security regulations require that an ALJ give the opinion of a treating source

---

[9] Tena relies on the Hearings, Appeals, and Litigation Law Manual (HALLEX) § I–2–5–55 (2016) to support her argument that the ALJ failed to address her post-hearing objection. Pl.'s Br. at 4–5, Dkt. 13. The version of that section at the time of the hearing states that the ALJ is obligated to "rule on the objection and discuss any ruling in the decision." HALLEX § I–2–5–55, https://web.archive.org/web/20150923080051/http://www.ssa.gov:80/OP_Home/hallex/I-02/I-2-5-55.html (last visited Oct. 22, 2018). This argument fails at the outset because the manual does not bind the agency and has no legal force. Schweiker v. Hansen, 450 U.S. 785, 789 (1981). Additionally, many district courts in the Fourth Circuit have held that HALLEX does not create judicially-enforceable rights. See, e.g., Looney, 2018 WL 3826778, at *13 (listing cases).

[10] Tena explicitly notes that her second assignment of error assumes only for the sake of argument that the ALJ's RFC determination was supported by substantial evidence. Pl.'s Br. at 13, Dkt. 13.

controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

1. Licensed Professional Counselor's Opinion

The Commissioner first argues that Mr. Burns is not an acceptable medical source, but is instead an "other source," meaning he cannot give a medical opinion and can only provide insight into Tena's functioning. Def.'s Br. at 15, Dkt. 17. Tena argues that Mr. Burns's opinion is entitled to great weight as her treating physician. Pl.'s Br. at 15, Dkt. 13.

Only acceptable medical sources can be considered treating sources entitled to the benefits of the treating physician rule. See SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006). A treating source is one that has provided the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship [with the claimant]." 20 C.F.R. § 404.1527(a)(2) (2017). A licensed professional counselor is not an acceptable medical source. 20 C.F.R. §§ 404.1513(a) (2013) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).[11] Nevertheless, the ALJ has a duty to

---

[11] The regulations on categories of evidence were recently revised for claims filed after March 27, 2017. See 20 C.F.R. § 404.1513 (2017). Because Tena filed her claim on December 17, 2013, I will apply § 404.1527,

13

consider all of the evidence available in a claimant's case record, including evidence provided from medical sources who are not "acceptable medical sources." See Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7, 2011) (citing SSR 06–03p; 20 C.F.R. §§ 404.1513(d), 416.913(d)). Although Mr. Burns was Tena's counselor from April 2015 through January 2016, R. 460, 466, he is not an acceptable medical source because he is a licensed professional counselor.

The Commissioner asserts that the ALJ has provided specific and legally sufficient reasons for discounting Mr. Burns's opinion, and thus this Court should affirm the ALJ's decision. While evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment, "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id.; see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)). To determine the weight given to the opinion of a source who is not an "acceptable medical source," the ALJ should consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Sodders v. Colvin, 6:14-CV-57, 2016 WL 1065837, at *2 (W.D. Va. Mar. 16,

---

which is effective for claims filed before March 27, 2017, and the former version of § 404.1513. See id. § 404.1513(a).

2016) (citing Beck v. Astrue, 3:11–CV–00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p)).

The ALJ specifically addressed Mr. Burns's opinion (R. 459–62) and found that it should be given little weight because it (1) proposed marked and extreme limitations, (2) is not supported by the record, and (3) is not consistent with contemporaneous examinations. R. 34. After reviewing the record, I find that substantial evidence supports the ALJ's findings.

Mr. Burns stated that Tena had marked restrictions in daily living activities; extreme difficulties in maintaining social functioning; and marked episodes of decompensation. R. 461. He did not have sufficient information to assess her concentration, persistence, or pace. Id. The Commissioner asserts that these limitations are extreme, especially in light of the effectiveness of the medications that Tena was taking for her symptoms. Tena's history of depression began as early as September 2008, and she was on medication for her mental health symptoms since at least February 2012. R. 421–22, 428–29. The medical records are replete with instances of Tena reporting improvements in her symptoms when she takes medications, which I also recognize. R. 391, 394, 406, 408, 410, 419, 448, 559, 570, 590, 595, 602, 608, 619. Mr. Burns himself noted that medication alleviates Tena's panic attacks. R. 460.

Tena contends that the assessment was not inconsistent with contemporaneous examinations. Pl.'s Br. at 17, Dkt. 13. Tena visited her primary care doctor on at least three occasions surrounding April 30, 2015, which is when she first saw Mr. Burns. R. 460. On April 7, 2015, Tena reported that her depression had improved with increased Prozac and Klonopin controlled her anxiety and helped her to sleep well, but she still experienced some anxiety and panic. R. 602–03. On April 22, 2015, Tena reported that her depression was fairly stable, although her generalized anxiety increased, which prompted her doctor to adjust her medications.

R. 599. Finally, on May 22, 2015, Tena said that her anxiety improved within a few days of her April 22 visit, and that she still had anxiety but was doing much better. R. 595. The ALJ specifically noted that Mr. Burns's opinion was inconsistent with contemporaneous examinations. Additionally, the ALJ recognized that Tena was, according to Mr. Burns's initial evaluation, cooperative, alert, fully oriented, and had no deficits in memory, attention, or fund of knowledge. R. 34, 551. The ALJ also noted that Mr. Burns had only seen the claimant on two prior occasions before filling out the Medical Source Statement. R. 34. While Tena did have an ongoing relationship with Mr. Burns, he did not yet have a "longitudinal picture" of her impairments, which the regulations indicate could be a factor in evaluating the opinion's weight. See 20 C.F.R. § 404.1527(c)(2).

Considering the record as a whole, there is substantial evidence to support the ALJ's decision to give Mr. Burns's opinion little weight. The ALJ considered Tena's medical history and contemporaneous medical examinations that were inconsistent with Mr. Burns's findings. The ALJ also recognized the fact that Mr. Burns submitted the evaluation after seeing Tena only twice, so he could not give a full and accurate depiction of Tena's symptoms and circumstances. The issue on appeal is not whether it is plausible that a different fact finder could have drawn a different conclusion, or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Sodders, 2016 WL 1065837, at *4 (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

2. ALJ's Lay Opinion

Finally, Tena asserts that the ALJ erred in not assigning weight to agency psychological

16

consultants and by not ordering a psychological consultative examination. Pl.'s Br. at 19, Dkt. 13. As a result, the ALJ's mental limitation analysis is based solely on his own "lay interpretation" of the medical record. Id. The Commissioner argues that the ALJ correctly recognized that the record did not support Mr. Burns's extreme limitations, and that he appropriately considered the entirety of the medical evidence. Def.'s Br. at 16, 20, Dkt. 17. Additionally, the ALJ was not required to order a consultative examination. Id. at 20.

Under the regulations, an ALJ has discretion in deciding whether to order a consultative examination. Bishop v. Barnhart, 78 F. App'x 265, 268 (4th Cir. 2003); see also 20 C.F.R. § 404.1519a. A consultative exam is only needed when the evidentiary record before the ALJ is inadequate. France v. Apfel, 87 F. Supp. 2d 484, 489 (D. Md. 2000) (citing Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986)); see also 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). A consultative examination may be used to "resolve any conflicts or ambiguities within the record" or "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or a prognosis necessary for decision." Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) (quoting 20 C.F.R. § 404.1519a(b)).

At the outset, Tena's argument is unfounded and does not recognize the benefit that the ALJ gave her in making his RFC determination. The ALJ stated he gave "no weight to the state psychological consultants." R. 34. This was, in fact, to Tena's benefit. Dr. Salman Gohar, the Virginia Department of Rehabilitative Services consultative examiner, did not make any recommendations for her psychological functional assessment. R. 450–51. In her initial applications for benefits, Dr. Howard Leizer determined that there was "no evidence of

significant limitations in functioning due to psychological factors." R. 86. He concluded that Tena had only mild restrictions in activities of daily living, and no difficulties in social functioning, concentration, persistence, or pace, and no episodes of decompensation. Id. In her application for reconsideration, Dr. Richard Milan's determinations were identical to Dr. Leizer's. R. 108, 118.

The ALJ found that Tena was actually *more* limited than any of the consultative examiners recommended. The ALJ noted that the psychological examiners found that she had very few limitations, but based on his evaluation of the record, he found that Tena had: mild restrictions in daily living activities; moderate difficulties in social functioning; mild difficulties regarding concentration, persistence, or pace; and no episodes of decompensation. R. 25–26. The ALJ's social functioning and concentration, persistence, and pace findings were more restrictive than those of the state psychological consultants. The ALJ then determined that Tena had the RFC to perform medium work, but with only occasional interaction with coworkers and supervisors, and no interaction with the general public. R. 25. As a result, Tena's objections to the ALJ's discounting of the state consultative examiners' opinions are unfounded because that determination actually benefited her.

Tena's argument that the ALJ then based his findings on his own lay opinion is also misplaced. "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1996) (citations omitted). The ALJ's RFC determination must be upheld if it is supported by substantial evidence. Stevens v. Colvin, No. 6:14–cv–00021, 2015 WL 5510928, at *20 (W.D. Va. Sep. 16, 2015) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (upholding ALJ's decision because substantial evidence supported

18

the mental impairments and RFC determinations)).

Here, the ALJ addressed specifically why he discredited the opinions of the state consultative examiners, as it is his duty to evaluate the consistency of the various medical opinions. Their opinions conflicted with the medical record as a whole because they found almost no limitations due to Tena's psychological conditions, and the ALJ instead credited Tena's records, self-reports, and testimony instead. The ALJ also explained his findings on her limitations regarding her mental impairments. He used other evidence in the record in making his findings, including (1) Tena's history of self-reports and her hearing testimony for her mild restriction in activities of daily living; (2) Tena's consistent complaints of anxiety in public places, medical and counseling records over time, and her hearing testimony for her moderate restriction in social functioning; and (3) Tena's medical records, use of prescription medications, mental status examinations, and the physical consultative examiner's findings for her mild restriction in concentration, persistence, and pace. R. 24–25. The ALJ's opinion demonstrates that he did not evaluate Tena's mental limitations based solely on his own opinion, but rather there was substantial evidence, including Tena's self-reports, testimony, medical records, and counseling records, to support his findings.

Accordingly, the ALJ did not have a duty to obtain additional medical evidence because the records were not "inadequate" for purposes of determining whether Tena was disabled. The ALJ's analysis shows that he considered multiple sources of psychological evidence, as well as evidence of her prescription use and medical examinations, in reaching his decision. It is not for a court to re-weigh the medical opinions and then decide whether it would have ordered an additional examination. Instead, a court asks whether substantial evidence supports the ALJ's decision not to order a consultative examination. I find that substantial evidence exists here.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  January 7, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge